LAWRENCE P. BLASKOPF
Trial Attorney, Tax Division
United States Department of Justice
Post Office Box 227
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 514-9642
LB5616

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CONOPCO, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 04-6025 (JCL) |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' BRIEF IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO CONOPCO'S MOTION FOR SUMMARY JUDGMENT

CHRISTOPHER J. CHRISTIE
United States Attorney


LAWRENCE P. BLASKOPF
Trial Attorney, Tax Division
United States Department of Justice
Post Office Box 227
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 514-9642

1968407.1

# TABLE OF CONTENTS

Page(s)

ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENTS

    I.      Section 162(k) Bars Conopco From Claiming a Deduction . . . . . . . . . . . . 5

    II.     Conopco Is Not Entitled To a Deduction Under Section 404(k),
           Because Its Redemptions Of Preferred Stock Were Not Dividends
           And Because Allowing A Deduction Would Constitute An
           Evasion Of Tax . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          A.     Conopco's redemptions of stock from its ESOP were not
                 dividends . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          B.     The Service properly disallowed deductions for these stock
                 redemptions under the authority Congress gave to it under
                 Section 404(k)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    III.    Conopco Should Not Be Allowed Its Claimed Deductions,
           Because it Would Receive The Equivalent of a Double Deduction . . . . . 24

    IV.    There Are Material Factual Issues In Dispute That Preclude
           Conopco From Receiving Summary Judgment . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

1968407.1

# TABLE OF AUTHORITIES

Page(s)

Atlantic Mutual Insurance Co. v. Commissioner,
    523 U.S. 382 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Atwater v. Commissioner,
    10 T.C. 218 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Boise Cascade Corp. v. United States,
    329 F.3d 751 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Brenner v. Commissioner,
    62 T.C. 878 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Charles Ilfeld Co. v. Hernandez,
    292 U.S. 62 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25, 27

Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,
    467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fort Howard Corp. v. Commissioner,
    103 T.C. 345 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Geisinger Health Plan v. Commissioner,
    985 F.2d 1210 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Himmel v. Commissioner,
    328 F.2d 815 (2d Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

INDOPCO, Inc. v. Commissioner,
    503 U.S. 79 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Kroy,
    27 F.3d 367 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Thor Power Tool v. Commissioner,
    439 U.S. 522 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Davis,

397 U.S. 301 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

1968407.1

United States v. Gilmore,
   372 U.S. 39 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Mead Corp.,
   533 U.S. 218 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

United States v. Skelly Oil,
   394 U.S. 678 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

Unum Corp. v. United States,
   130 F.3d 501 (1st Cir. 1997), *cert. denied*, 525, U.S. 810 (1998) . . . . . . . . . . . . . . . . . . 6

**FEDERAL STATUTES**

26 U.S.C. § 162(k)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

26 U.S.C. § 302(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 15

26 U.S.C. § 404(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 26, 28

26 U.S.C. § 7805(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

26 U.S.C. § 805 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

26 U.S.C. § 808(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

29 U.S.C. § 1002(21) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

H.R. Conf. Rep. 99-841, 1986 U.S.C.C.A.N. 4075, 4256-57 . . . . . . . . . . . . . . . . . . . . . 12

S. Rep. No. 313, 99th Cong., 2d Sess., 1034 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

S. Rep. No. 1622, 83rd Cong., 2d Sess., 44-45 (1954) . . . . . . . . . . . . . . . . . . . . . 16, 18, 19

Treas. Order 111-2, 1981-1 C.B. 698, 699 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Treas. Reg. § 1.302-2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Treas. Reg. § 601.601(d)(2)(v)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

1968407.1

The United States, by its undersigned counsel, hereby submits its brief in support of its cross-motion for summary judgment and in opposition to Conopco, Inc.'s (Conopco's) motion for summary judgment

## ISSUES

1. 26 U.S.C. § 162(k)(1) provides that a corporation is not allowed deductions for payments it makes in connection with its reacquisition of stock irrespective of whether another Internal Revenue Code section permits a deduction.  Conopco claims deductions under 26 U.S.C. § 404(k) for amounts it paid to reacquire its stock from an ESOP, amounts which this ESOP later distributed to its members who were retiring.  Even if Conopco meets Section 404(k)'s requirements for a deduction, does Section 162(k) bar Conopco from receiving this deduction?

2. In order to qualify for a Section 404(k) deduction, Conopco's preferred stock redemptions must be considered dividends.  Under 26 U.S.C. § 302(b)(1), stock redemptions that are not essentially equivalent to dividends are not dividends.  In enacting Section 302(b)(1), Congress intended to permit minority holders of preferred stock who had no control over when their stock would be redeemed to receive capital gain treatment for redemptions.  Here, the ESOP Trust was a minority holder of preferred stock, and it had no control over when Conopco would redeem its stock.  Were amounts Conopco paid to redeem its stock dividends?

3. Section 404(k)(5)(A) empowers the Secretary of the Treasury to disallow a Section 404(k)(1) deduction if he determines the dividend constitutes an evasion of tax.

1968407.1

In Rev. Rul. 2001-6, the Service determined that deductions claimed for amounts corporations pay to redeem stock from an ESOP constitute an evasion of taxation and are not deductible.  Did the Service abuse its discretion in disallowing Conopco's claimed deduction?

4. The "double deduction" doctrine does not permit a taxpayer to claim deductions for more than its actual economic expenditures.  If Conopco were allowed the deductions it claims, it would receive deductions totaling $2 for each $1 it expended.  Does the "double deduction" doctrine preclude Conopco from receiving the deductions it claims?

5. Conopco would only be entitled to summary judgment if there are no genuine issues of material fact in dispute.  Here, some of the material facts on which Conopco relies are in dispute.  Is Conopco entitled to summary judgment?

## FACTS

This is a corporate income tax refund action.  Conopco is seeking a refund in each of its 1994 through 2000 tax years on the basis that it is entitled to a deduction for amounts it paid to its employee stock ownership plan (ESOP) to redeem shares of its preferred stock.

Conopco,[1] a corporation, had two predecessors: Bestfoods and CPC International, Inc.  (Stipulation of Facts ¶¶ 1, 4.) During the tax periods at issue in this

---

[1]For the sake of convenience, references to Conopco in this brief will also refer to its predecessors, Bestfoods and CPC International, Inc.

case, 1994 - 2000, its common stock was publicly traded on the New York Stock Exchange.  (Id. ¶ 4.)

Conopco's predecessor, CPC International, established an ESOP in May, 1989, and it became a part of Conopco's Savings/Retirement Plan for its salaried employees. (Id. ¶¶ 5, 6.) Conopco's plan was a qualified plan for purposes of ERISA.  (Id. ¶ 7.) At the time the ESOP was formed, Conopco and the Northern Trust Company entered into a trust agreement concerning the ESOP.  (Id. ¶ 8.) The agreement provided that the Northern Trust Company was to be the Trustee of the ESOP.  (Id.) The Northern Trust Company continued as trustee until July 1, 1994, at which time Fidelity Management Trust Co. (Fidelity) became the trustee.  (Id. ¶ 16.)

In December, 1989, Conopco issued its Series A convertible preferred stock to the ESOP.  (Id. ¶ 9.) To purchase this stock, the ESOP issued bonds and paid over the proceeds to Conopco.  (Id. ¶ 10.) Conopco did not pay income tax on the funds it received for this stock.  (Id. ¶ 11.)

Conopco made periodic cash contributions to the ESOP which it claimed as deductions on its income tax returns.  These contributions enabled the ESOP to pay the principal and interest due on the bonds it had issued; and, as the ESOP made these payments, it acquired equity in the stock.  These contributions were considered to be Conopco's matching contribution to the ESOP.  (Id. ¶ 12-14.)

Conopco also paid regular dividends to the ESOP on this preferred stock, and it claimed deductions for these dividends as well.  (Id. ¶ 15.)

1968407.1

ESOP participants who terminated their employment with Conopco were given three alternatives to receive the value of the stock attributable to their accounts.  They could receive the value of the stock assigned to their account in the form of cash, they could elect to have an annuity purchased using that cash, or they could convert the preferred stock into Conopco common stock.   (Id. ¶ 17.)

Conopco was the ESOP's only source of cash.  The ESOP trust used the cash it received either to pay the bonds or to pay benefits to its participants.  As a result, Fidelity reported that at the end of each of the years between 1995 and 1999, the trust's only assets were preferred stock.   (Beitsch Dec. ¶ 8.)

Although the trust agreement gave the ESOP trustee certain rights with respect to the preferred stock it held, the trustee was required to follow the directions of Conopco's Pension Committee with respect to payments or transfers of cash or property from the trust fund.  (Stip. Ex. A. Sect. 5.2.)  As a result, the trustee's role in arranging for payments of benefits to participants in the ESOP was largely ministerial.  (Id.)

Conopco's Pension Committee sent the ESOP Trustee a letter on March 22, 1991, which instructed the Trustee as to how the Trustee was to handle benefit payments from the trust.  (Id. Ex. C.) The letter stated that Conopco would process benefit payment requests from ESOP participants.  (Id.) Conopco would provide the trustee, from time to time, redemption letters which set forth the number of preferred shares the trustee was to tender to Conopco, and which broke down the number between shares which were to be redeemed for cash and the number of shares that were to be converted

into Conopco's common stock.  (Id.) Regarding shares to be redeemed for cash,

Conopco stated it would calculate the amount of the redemption proceeds and it would

periodically transfer funds to the trust.  (Id.) At the time Conopco issued its redemption

letter or shortly thereafter, Conopco would provide the trustee with a payout list setting

forth how much each terminating employee/participant was to receive.  (Id.) These

directions remained in effect during the years at issue in this case.  (Id. ¶ 19.)

## ARGUMENT I

## SECTION 162(k) BARS CONOPCO
## FROM CLAIMING A DEDUCTION

26 U.S.C. § 162(k)(1) bars a corporation deductions for amounts it paid in

connection with the reacquisition of its stock.  Here, Conopco claims it is entitled to a

deduction under Section 404(k)(1) for amounts it paid to redeem its preferred stock

from its ESOP, amounts which the ESOP subsequently distributed to Conopco's

employees that were terminating their employment.  Because Conopco paid these

amounts in connection with the reacquisition of its stock, Section 162(k)(1) bars the

deduction it seeks here.

Section 162(k)(1) provides in relevant part:

> [N]o deduction otherwise allowable shall be allowed under this
> chapter for any amount paid or incurred by a corporation in
> connection with the reacquisition of its stock or of the stock
> of any related person (as defined by section 465(b)(3)(C)).[2]

---

[2]For periods prior to September 13, 1995, "the redemption of stock" replaced "the reacquisition of its stock or of the stock of any related person (as defined by section 465(b)(3)(C))."

In *Unum Corp. v. United States*, 130 F.3d 501 (1st Cir. 1997), *cert. denied*, 525 U.S. 810 (1998), a life insurance company sought a deduction for amounts of cash and stock it distributed to policyholders.  It asserted these amounts were policyholder dividends under 26 U.S.C. § 808(b); and as a result, they were deductible under 26 U.S.C. § 805. The Court denied the deduction.  It held that even if the plaintiff could qualify for a deduction under Section 805, "Section 162(k)(1) unreservedly prohibits corporations from taking deductions for distributions made in the course of reacquiring its stock." *Id*. at 511.  It also held that "this chapter" for purposes of Section 162(k)(1) refers "to Chapter One of the Code (I.R.C. §§ 1-1399),"  and therefore Section 162(k) applied to bar the deduction the taxpayer was seeking under Section 805.  *Id*. at 511-12.

Here, Section 404(k)(1) is also within Chapter One of the Internal Revenue Code. Accordingly, Conopco would not be allowed a deduction if Section 162(k) applies.

Logically, it is apparent that Section 162(k)(1) applies to bar the deductions Conopco seeks.  The deductions Conopco seeks are deductions for amounts it paid to redeem its preferred stock from its ESOP, amounts which the ESOP then distributed to Conopco's departing employees.  In accordance with Section 162(k)(1)'s plain language, the relevant issue is whether Conopco paid these amounts in connection with reacquiring its stock.

Clearly, the amounts Conopco paid to redeem its preferred stock and which its ESOP then distributed to Conopco's employees are amounts Conopco paid in

connection with its reacquisition of stock.  These amounts are directly connected to

amounts Conopco paid to reacquire its preferred stock.  Therefore, Section 162(k)

applies to bar the deductions Conopco seeks irrespective of whether these amounts are

deductible under Section 404(k)(1).

Conopco asserts, however, that Section 162(k) does not apply to bar its claimed

deduction.  Conopco relies on the holding of *Boise Cascade Corp. v. United States*, 329 F.3d

751 (9th Cir. 2003).  There, the taxpayer claimed entitlement to deductions under Section

404(k) with respect to amounts it paid to redeem preferred stock from its ESOP,

amounts that the ESOP subsequently paid over to the ESOP's participants.  The Ninth

Circuit held that the redemptions were deductible under Section 404(k), and Section

162(k) did not preclude the taxpayer's entitlement to the deductions.

*Boise Cascade*, however, was wrongly decided.  The Ninth Circuit's analysis of

Section 162(k) was wrong for two reasons: 1) the court did not correctly state the issue to

be decided.  It disregarded the fact that the taxpayer was claiming that its payments to

its ESOP to redeem its stock and the ESOP's subsequent distribution of the proceeds

constituted an "applicable dividend" for purposes of Section 404(k), and it merely

focused on the ESOP's distributions of the redemptions' proceeds; and 2) the court did

not consider whether there was a logical relationship between the taxpayer's redemption

of stock and the ESOP's subsequent distribution of the proceeds.

In holding that Section 162(k) did not bar the deduction the taxpayer was seeking,

the Ninth Circuit framed the issue to be decided as follows:

> [T]he key question is whether the distributions to the Participants were payments made "in connection with " the redemption of the convertible preferred stock. *Id.* at 757.

But in so stating the issue, the court did not consider that in order to qualify for the Section 404(k) deduction two steps had to occur: 1) the taxpayer had to redeem its stock from the ESOP, and 2) the ESOP had to distribute the proceeds from the redemption to its participants. The taxpayer would not have been entitled to the Section 404(k) deduction unless it had redeemed its preferred stock from the ESOP and such redemptions were considered dividends.

Accordingly, because the Section 404(k) deduction required both the corporate redemption of stock from its ESOP and the ESOP's subsequent distribution of the proceeds to its members, the court wrongly stated the issue, and its subsequent decision, based on its analysis of this issue, was wrong.

The Ninth Circuit's decision was also flawed because it misconstrued Section 162(k). In construing the phrase "in connection with" in Section 162(k), the court relied on its holding in *In re Kroy*, 27 F.3d 367 (9th Cir. 1994). *Kroy* held that the "origin of the claim test" set forth in *United States v. Gilmore*, 372 U.S. 39, 49 (1963), should apply to determine whether the claimed deduction was for an amount paid "in connection with" the redemption of stock. The court, however, was wrong to apply this test to Section 162(k), because this test is not called for under the plain language of the statute.

In *Fort Howard Corp. v. Commissioner*, 103 T.C. 345 (1994), *superseded by legislation and supplemented,* 107 T.C. 187 (1996), the Tax Court rejected the application of this test to

Section 162(k).  There, the petitioner sought a deduction for costs of obtaining financing

to obtain capital used in a leveraged buyout.  The petitioner claimed the Tax Court

should apply "the origin of the claim test" in determining whether Section 162(k)

applied to bar these expenses.

The Tax Court, however, held that such costs were not deductible under Section

162(k), because they were "in connection with" the redemption of the petitioner's stock.

In so holding, the Tax Court considered applying the origin of the claim test but rejected

it.  It held:

> Thus, the origin test does not help to resolve this case.  Nor should we
> expect it to.  It was designed to make substantive distinctions between
> business and personal expenditures, or between current or capital
> expenditures.  There are no such distinctions to be made here.  *Id*. at 360.

The Tax Court held that the phrase "in connection with" for purposes of Section

162(k) should be interpreted as follows:

> The words in a revenue act should be interpreted in their ordinary,
> everyday sense.  The phrase "in connection with" has been interpreted
> broadly.  "In connection with" means associated with, or related.
> Events or elements are "connected" when they are "logically related".
> *Id*. at 352 (citations omitted).

In applying this test, the Tax Court held that the costs associated with the

financing of the leveraged buyout were not deductible because they were costs incurred

in connection with the redemption of stock.  It held that, "There is a clear, logical relation

between petitioner's redemption, the corresponding need for financing and the costs

incurred to obtain that financing."  *Id.*  It also held that "These costs...were an integral

1968407.1

part of a detailed plan...." *Id.* at 353.

Here, similarly, the amounts Conopco paid to redeem its stock from its ESOP and the ESOP's subsequent distributions of these proceeds to its participants were integral parts of a plan to provide benefits to Conopco's departing employees.  This is made clear in the 1991 letter Conopco wrote to the Trustee of the ESOP.  The letter "constitutes a standing direction to you...regarding the manner in which benefit payments from the Trust shall be handled."  The company states it "will process participant benefit payment requests and shall provide you...with a letter (the "Redemption Letter") indicating the aggregate number of shares...to be tendered to the Company."  The company "shall calculate the redemption price...and shall indicate in the Redemption Letter the appropriate price per share and total amount of redemption proceeds."  The company also stated it would "arrange for periodic wire transfers of funds to provide the redemption proceeds."  Conopco stated that the Trust would "receive with, or following your receipt of the Redemption Letter, a payout list from us containing a detailed breakdown by participant of benefit payment information."

As stated in its letter to the Trust, the amounts Conopco paid to redeem its stock and the ESOP's subsequent payments of these amounts to the ESOP's participants were key steps in the plan to provide benefit payments to the ESOP's participants.  There was a logical relation between the redemption and the payment of these benefits.  Accordingly, the payment of benefits were in connection with Conopco's redemption of its stock from the ESOP, and Section 162(k)(1) applies to bar Conopco's entitlement to

- 10 -

1968407.1

any deduction.

Conopco also asserts that it was not required to redeem the shares.  (Conopco's Brief at 22.) This assertion is disputable.  Even if Conopco had no contractual obligation to redeem the shares, it might be found to have a fiduciary obligation to redeem them.[3]

Additionally, it is irrelevant whether Conopco had an obligation to redeem the ESOP's stock.  The fact is that Conopco would not be entitled to a Section 404(k) deduction unless it did so.  It could not receive a Section 404(k) deduction based solely on the ESOP's distributions of benefits to Conopco's departing employees.  And Conopco has not presented any evidence that it ever refused to redeem stock it had instructed the ESOP to tender to it.

Finally, Conopco asserts that the legislative history accompanying Section 162(k) supports its position.  (Conopco's Brief at 23.) The history Conopco relies on states:

> [W]hile the phrase "in connection with a redemption" is intended to be construed broadly, the provision is not intended to deny a deduction for otherwise deductible amounts paid in a transaction that has no nexus with the redemption other than being proximate in time and arising out of the same general circumstances. For example, if a corporation redeems a departing employee's stock and makes a payment to the employee in discharge of the corporation's obligations under an employment contract, the payment in discharge of the contractual obligation is not subject to disallowance under this provision.
> H.R. Conf. Rep. 99-841, 1986 U.S.C.C.A.N. 4075, 4256-57.

---

[3]Even if Conopco were not named as a fiduciary of the ESOP, it is likely Conopco would be considered a fiduciary under 29 U.S.C. § 1002(21)(A), because it exercised discretionary control over plan assets.  (Stipulation of Facts Ex. A Sec. 5.2.)

1968407.1

But this legislative history does not support Conopco's case.  The history cites two separate transactions: 1) the corporation's redemption of stock from an employee; and 2) a corporate payment to the employee to discharge its contractual employment obligations.  The Conference Report presents these transactions as being separate, although they may have happened at or about the same time period.  It states the payment to discharge contractual obligations would not be barred from being deductible.  It does not state that both the redemption and the contractual payment are deductible.

Here, by contrast, Conopco relies on its stock redemptions for the deductions it is seeking, not on any payments in addition to the redemptions.  It cannot receive a deduction based solely on the ESOP's payment of benefits.  Further, as discussed above, there was a nexus between Conopco's redemption of stock and the ESOP's distributions to the departing employees.  They were steps in the plan for providing benefits to the employees.

Conopco also cites *Atwater v. Commissioner*, 10 T.C. 218 (1947), in support of its position.  But *Atwater* is distinguishable.  In *Atwater*, a corporation redeemed the stock of an employee for an amount that substantially exceeded the stock's value.  The Tax Court held that the portion of the payment up to the stock's value was a non-deductible redemption, but that the portion of the payment in excess of the value represented deductible compensation for prior services.  *Atwater*, 10 T.C. at 247.

Here, by contrast, there is no evidence that Conopco ever redeemed the shares

- 12 -

tendered to it for more than their value.  Accordingly, no part of the redemption was

additional compensation that Conopco could claim as a deduction, and *Atwater* provides

absolutely no support for Conopco's position.

Finally, Conopco's argument that the legislative history supports its position is

inconsistent with its arguments that it is entitled to a Section 404(k) deduction.  To

receive a Section 404(k) deduction, a taxpayer must show that it has paid out a dividend

and Conopco so argues in seeking this deduction.  See Conopco's brief at 24-29.  But in

arguing that Section 162(k) does not apply to bar this deduction, Conopco asserts these

payments are not dividends, but rather represent "compensation arising from the

employer-employee relationship."  Brief at 24.  Conopco's payments, however, cannot be

both compensation and dividends.

Given the plain language of Section 162(k)1), this Section applies to bar the

deductions Conopco seeks here.

### ARGUMENT II

### CONOPCO IS NOT ENTITLED TO A DEDUCTION UNDER SECTION 404(k), BECAUSE ITS REDEMPTIONS OF PREFERRED STOCK WERE NOT DIVIDENDS AND BECAUSE ALLOWING A DEDUCTION WOULD CONSTITUTE AN EVASION OF TAX

Conopco's refund action is based upon its claimed entitlements to deductions

under Section 404(k).  An income tax deduction, "is a matter of legislative grace and

...the burden of clearly showing the right to the claimed deduction is on the taxpayer. "

*INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1993).  Statutes allowing deductions are

to be "strictly construed" and allowed "'only as there is clear provision therefor.'"  *Id.*
(quoting *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934)).

Here, even if Conopco's claimed deduction were not barred by Section 162(k), it
still would not be entitled to a refund.  There are two reasons Conopco is not entitled to a
deduction under Section 404(k): 1) its redemptions of preferred stock from its ESOP were
not dividends, and therefore it does not meet Section 404(k)'s requirement that the
corporate payment be a dividend; and 2) Congress has given the Service authority to
disallow deductions under Section 404(k)(1) where the Service has determined that
allowing a deduction would constitute an evasion of tax, and the Service has determined
that allowing a deduction for amounts corporations pay to redeem stock from their
ESOPs would constitute an evasion of tax.

**A. Conopco's redemptions of stock from its ESOP were not dividends.**

Section 404(k)(1) permits a C corporation to claim a deduction for "the amount of
any applicable dividend paid in cash by such corporation...."

Conopco is not entitled to a deduction under this Section because its redemptions
of preferred stock from its ESOP were not dividends for purposes of the Internal
Revenue Code.  They were not dividends, because the redemptions were "not essentially
equivalent to a dividend."  26 U.S.C. § 302(b)(1).

Section 316(a) of the Code defines a "dividend" as "any distribution of property
made by a corporation to its shareholders" out of its current or accumulated earnings
and profits, and further provides that "[t]o the extent that any distribution is...treated as

- 14 -

a distribution of property to which section 301 applies, such distribution shall be treated

as a distribution of property for purposes of this subsection."

Section 302(a) states the general rule that "[i]f a corporation redeems its

stock...and if paragraph (1),(2),(3) or (4) of subsection (b) applies, such redemption shall

be treated as a distribution in part or full payment in exchange for the stock." Section

302(d) provides that "if a corporation redeems its stock ...and if subsection (a) of this

section does not apply, such redemption shall be treated as a distribution to which

section 301 applies."

Thus, a stock redemption will be not treated as a dividend if it falls within one of

the four categories set forth in Section 302(b).  Those categories include a redemption

that is "not essentially equivalent to a dividend."  26 U.S.C. § 302(b)(1).

The legislative history to Section 302(b) states that one reason Congress enacted

Section 302(b)(1) was to provide capital gain treatment for redemptions of stock held by

minority shareholders of preferred stock who exercised no control over corporate affairs,

including if and when a redemption may occur.  See S. Rep. No. 1622, 83rd Cong., 2d

Sess., 44-45 (1954).

The regulations to Section 302(b) provide that the inquiry as to whether a stock

redemption is "not essentially equivalent to a dividend" is factual.  Treas. Reg. § 1.302-

2(b) states:

> The question whether a distribution in redemption of stock of a
> shareholder is not essentially equivalent to a dividend under section
> 302(b)(1) depends upon the facts and circumstances of each case.

In *United States v. Davis*, 397 U.S. 301 (1970), the Court considered whether the redemption of stock was a dividend where the stockholder owned 100 percent of the corporation both before and after the redemption.  The Court held the redemption was a dividend.  It stated:

> If a corporation distributes property as a simple dividend, the effect is to transfer the property from the company to its shareholders without a change in the relative economic interests or rights of the stockholders. Where a redemption has that same effect, it cannot be said to have satisfied the "not essentially equivalent to a dividend" requirement of § 302(b)(1).  Rather, to qualify for preferred treatment under that section, a redemption must result in a meaningful reduction of the shareholder's proportionate interest in the corporation. Clearly, taxpayer here, who (after application of the attribution rules) was the sole shareholder of the corporation both before and after the redemption, did not qualify under this test.  *Id*. at 313.

The *Davis* Court did not discuss what constitutes an "interest" or what constitutes a "meaningful reduction."  In *Himmel v. Commissioner*, 328 F.2d 815, 817 (2d Cir. 1964), however, the court held that a shareholder's interest includes: 1) the right to vote; 2) the right to participate in current earnings and the accumulated surplus of a corporation; and 3) the right to share in assets upon liquidation.

In Rev. Rul. 76-385, the Service considered how redemptions of relatively small amounts of stock should be treated when the redeemer was, as here, a large corporation whose stock was publicly traded.  Rev. Rul. 76-385, 1976-2 C.B. 92, 1976 WL 36205.  The Service held that a redemption of a *de minimis* interest of stock in a corporation traded on the New York Stock Exchange "was not essentially equivalent to a dividend" for purposes of Section 302(b)(1), and accordingly the redemption was a capital transaction.

- 16 -

Under the facts of Rev. Rul. 76-385, as a result of the redemption, the stockholder's share of the corporation was reduced from .0001118 percent of the corporation to .0001081 percent, an ownership reduction of 3.7 millionths of one percent. The Service reasoned that allowing capital gain treatment for such a redemption was in accordance with Congress' intention to exclude redemptions involving minority shareholders from dividend treatment. It also reasoned that as a result of the redemption the stockholder had reductions in its voting rights, its rights to participate in earnings and the corporate surplus, and its rights to share in assets upon liquidation.

Here, similarly, Conopco's redemptions of preferred stock from its ESOP were not dividends for the same reasons that the Service held that the redemption at issue in Rev. Rul. 76-385 was not a dividend. First, allowing capital gain treatment carries out Congress' intention in enacting Section 302(b)(1). Congress stated in its legislative history that a purpose for its enactment of Section 302(b)(1) was to provide preferential capital gain treatment for redemptions of preferred stock where the stockholder has no control over whether or when the redemption would occur. S. Rep. No. 1622 at 44. Here, that is the case. The ESOP was obligated to redeem shares of its preferred stock whenever Conopco instructed it to do so. It had no control over when it was to tender shares for redemption.

Second, the ESOP's interest in Conopco was meaningfully reduced, even if it was reduced by 3.7 millionths of one percent. Immediately after each redemption, the ESOP had a reduction in its voting rights in Conopco, its rights to participate in Conopco's

earnings, and its rights to share in assets if Conopco were to liquidate.

Because the Conopco's stock redemptions were not dividends, and because the deduction under Section 404(k)(1) is for "applicable dividends," Conopco is not entitled to a deduction for its redemptions of preferred stock from its ESOP.  Accordingly, Conopco is not entitled to the tax refunds it is  seeking.

Conopco argues, however, that the redemptions should be classified as dividends because: 1) the legislative purpose behind Section 302(b)(1) does not apply to its transactions; and 2) no redemption caused a "meaningful reduction" in the ESOP's interest in Conopco.  Conopco's arguments, however, are based on factual predicates that are incorrect.

Conopco wrongly asserts that the legislative purpose behind Section 302(b)(1) is not implicated because "The Trust was not the stereotypical 'helpless' shareholder." (Conopco's brief at 28.)  It asserts that the redemptions were voluntary transactions between the Trust and the plaintiff.  (Id. at 29.)

But the Trust was helpless.  It had no discretion as to when Conopco would redeem shares of preferred stock it was holding.  The redemptions did not occur as a result of any voluntary act of the Trust, but rather in accordance with Conopco's instructions.  This is made clear in the letter Conopco's Pension Committee sent the Trust in 1991, a letter to which the parties have stipulated as Exhibit C to their Stipulation of Facts.  Conopco stated its letter  constituted "a standing direction to" the Trust under the Trust Agreement.  The letter further stated to the Trust that Conopco,

1968407.1

> shall provide you, from time to time, with a letter (the "Redemption Letter") indicating the aggregate number of shares of CPC International, Inc. Series A ESOP Convertible Preferred Stock ("Preferred Shares") to be tendered to the Company, with a breakdown of the number of Preferred Shares to be redeemed for cash and the number to be converted to the Company's Common Stock.... (Stip. of Facts, Ex. C.)

Accordingly, the Trust was in the same position as the small holders of preferred stock which Conopco's counsel acknowledges Section 302(b)(1) was enacted to protect. Just as with the small holders of preferred stock, the Trust had no control over when Conopco might choose to redeem a portion of its shares. Conopco determined when it would send letter to the Trust authorizing the number of shares to be tendered to it. The Trust had no input in this decision at all.

Conopco also asserts that its redemptions did not result in a meaningful reduction in the ESOP's interest in it. It asserts that its largest share redemption consisted of 4,746 shares, and this redemption should not be considered a "meaningful reduction" for purposes of the Section 302(b)(1) analysis. Conopco's Brief at 26-7.

The United States disputes Conopco's factual statement. It disputes that this was the largest share redemption, and it also disputes that Conopco's computation of the reduction of the ESOP's interest in it was correct. (Beitsch Decl. ¶ 7; United States' response to Conopco's statement of material fact ¶ 49.) But even if this were the largest redemption, by Conopco's own calculations, the reduction in the ESOP's interest in Conopco as a result of the 4,746 share redemption was more than 20,000 times larger than the reduction that occurred as a result of the stock redemption at issue in Rev. Rul.

76-385.

According to Conopco's computations, as a result of the 4,746 share redemption, the Trust's ownership interest in Conopco was reduced from 2.7884 percent ownership to 2.7809 percent, 7.5 thousandths of one percent.  (Rolfe Dec. Ex. K p. C009231.) In Rev. Rul. 76-385, by contrast, the ownership was reduced 3.7 millionths of one percent, less than .005 percent of the reduction in ownership percentage as a result of the 4746 share redemption.

As a result, Conopco's arguments fail that its share redemptions were dividends, because 1) it relies on facts that are simply not present here; and 2) treating the share redemptions as dividends would contravene the Congress' purpose in enacting Section 302(b)(1).  Accordingly, Conopco is not entitled to a deduction under Section 404(k)(1).

**B. The Service properly disallowed deductions for these stock redemptions under the authority Congress gave to it under Section 404(k)(5)(A).**

Even if Conopco could establish that the amounts it paid for its stock redemptions were deductible under Section 404(k)(1), and that Section 162(k)(1) did not act to bar deductions for these redemptions, it still would not be entitled to deduct these amounts, because the Service has determined that allowing such a deduction would constitute an evasion of tax.

Congress recognized that the deduction allowed under Section 404(k)(1) could be subject to abuse.  Consequently, it enacted Section 404(k)(5)(A).  This subsection gives the Service the authority to disallow a deduction under 404(k)(1) if it determines the

- 20 -

deduction constituted, in substance an evasion of tax.  During the tax years at issue, Section 404(k)(5)(A) provided:

> The Secretary may disallow the deduction under paragraph (1) for any dividend if the Secretary determines that such dividend constitutes, in substance, an evasion of taxation.

The legislative history to Section 404(k)(5)(A) recognized that this subsection, "empowers the Treasury to disallow deductions for dividends paid on stock held by an ESOP, if the dividend constitutes, in substance, the avoidance of taxation."  S. Rep. No. 313, 99th Cong., 2d Sess., 1034 (1986).

In accordance with Section 404(k)(5)(A), the Service issued Rev. Rul. 2001-6 (2001 WL 44001).  This Revenue Ruling disallowed as deductions payments corporations made to redeem stock held by ESOPs.  Rev. Rul. 2001-6 states in relevant part:

> Pursuant to section 404(k)(5)(A), a deduction under section 404(k)(1) would be disallowed for payments in redemption of employer securities used to make distributions to terminating ESOP participants because such treatment would constitute, in substance, an evasion of taxation.

Because the Service is empowered to disallow the deductions Conopco seeks here and has disallowed these deductions in accordance with the authority granted to it, Conopco is not entitled to a deduction unless it can show that the Service abused its discretion in disallowing this deduction.  *Cf. Thor Power Tool v. Commissioner*, 439 U.S. 522, 547-48 (1979)(analyzing Section 166(c) , another Section that gave the Secretary discretion to allow a deduction, and holding that the Commissioner's determination "must be sustained unless the taxpayer proves that the Commissioner abused his

1968407.1

discretion").

Rev. Rul. 2001-6 is also entitled to deference, because, as a revenue ruling, it represents the Service's interpretation of Section 404(k).  Under *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), a court must follow an agency's interpretation of a statute unless that interpretation is arbitrary, capricious or manifestly contrary to the statute.

Unlike Treasury Regulations, which the Supreme Court has already ruled are entitled to *Chevron* deference (*Atlantic Mut. Ins. Co. v. Commissioner*, 523 U.S. 382, 387-389 (1998)), revenue rulings are not subject to notice and comment.  The Supreme Court has made it clear, however, that, while notice-and-comment rulemaking and formal adjudication almost always assure *Chevron* deference, the absence of such formalities in the rulemaking process does not preclude such deference, so long as it appears that Congress intended to grant the agency the power to make rules with the "force of law" and "the agency interpretation claiming deference was promulgated in the exercise of that authority."  *United States v. Mead Corp.*, 533 U.S. 218, 226-227, 230-231 (2001).

Rev. Rul. 2001-6 satisfies this standard.  The Service published it in accordance with the specific authority Congress granted it under Section 404(k)(5)(A).  The Service also promulgated Rev. Rul. 2001-6 pursuant to its general statutory authority to "prescribe all needful rules and regulations for the enforcement of" the Internal Revenue Code.  26 U.S.C. § 7805(a); Treas. Order 111-2, 1981-1 C.B. 698, 699.

Revenue rulings are formal interpretative rulings involving "substantive tax law."

Treas. Reg. § 601.601(d)(2)(v)(a).   They are issued by the Internal Revenue Service's

National Office and published in the Internal Revenue Bulletin as the agency's "official"

position to guide taxpayers and IRS officials alike.   Treas. Reg. § 601.601(d)(2)(i)(a).   Both

rulings and regulations are written and reviewed at the same levels of the Service and

the Treasury Department.   Treas. Order 111-2, *supra*.   Like regulations, revenue rulings

have legal force and effect in that they constitute "precedents to be used in the

disposition of other cases" that "may be cited and relied upon for that purpose."   Treas.

Reg. § 601.601(d)(2)(v)(d).   Revenue rulings consequently have the "force of law" within

the meaning of  *Mead*, and *Chevron* deference is therefore required.  *Mead*, 533 U.S. at 227.

Prior to the Supreme Court's decision in *Mead*, the Third Circuit held that "courts

are to give weight to IRS revenue rulings but may disregard them if they conflict with

the statute that they purport to interpret or its legislative history, or if they are otherwise

unreasonable."  *Geisinger Health Plan v. Commissioner*, 985 F.2d 1210, 1216 (3d Cir. 1993).

Revenue rulings, like Treasury Regulations, should also be entitled to *Chevron*

deference,[4] particularly here, where the Service promulgated Rev. Rul. 2001-6 in

accordance with the authority Congress gave it under Section 404(k)(5)(A).

Here, the Service did not abuse its discretion in disallowing the deductions at

issue.   As stated in Rev. Rul. 2001-6, "The application of section 404(k) to redemption

amounts not only would allow employers to claim deductions for payments that do not

---

[4]Rev. Rul. 76-385, discussed in pages 17-18 of this brief, is also entitled to *Chevron* deference.

1968407.1

represent true economic costs, but also would vitiate important rights and protections for recipients of ESOP distributions,...."  Such an analysis was by no means arbitrary or capricious or contrary to Section 404(k).  Indeed, in publishing Rev. Rul. 2001-6, the Service was doing precisely what Congress authorized it to do when it enacted Section 404(k)(5)(A).

## ARGUMENT III

## CONOPCO SHOULD NOT BE ALLOWED ITS CLAIMED DEDUCTIONS, BECAUSE IT WOULD RECEIVE THE EQUIVALENT OF A DOUBLE DEDUCTION

Conopco should also not be permitted a deduction under Section 404(k), because to allow it a deduction would grant Conopco, "the practical equivalent of a double deduction."  *Charles Ilfeld Co. v. Hernandez*, 292 U.S. 62, 68 (1934).  It would allow Conopco to deduct twice one economic expense.

Conopco received funds from the ESOP at the time it issued stock to the ESOP, and, in essence, it returned these funds, to enable the ESOP to pay off its bonds and acquire its equity interest in the stock.  Conopco received deductions at the time it returned these funds back to the ESOP.  Here, Conopco is also claiming a deduction for amounts it paid to redeem this stock from the ESOP.  Conopco made one net expenditure that it is seeking to deduct twice.

As an illustration, consider the example of a corporation that has one employee and establishes an ESOP for that employee.  It issues one share of stock to the ESOP for $100 at the beginning of its tax year.  The ESOP had borrowed the $100 to pay the

1968407.1

corporation for this stock.  Later in the year, the corporation returns this $100 to the

ESOP to enable the ESOP to repay its creditor.  Still later in the year, the employee

retires, and the corporation pays the ESOP $100 to redeem the share of stock.  In this

scenario, the corporation made a net payment of $100.  Under the position Conopco's

espouses, this corporation would be entitled to $200 of deductions for its net payment of

$100: 1) a $100 deduction for its payment to the ESOP to enable the ESOP to repay the

loan; and 2) a $100 deduction at the time it redeemed the stock.

In *Charles Ilfeld Co. v. Hernandez*, *supra*, the taxpayer sought to deduct the same

loss twice: both as an operating loss and as an investment loss.  It claimed it was entitled

to this result under two separate sections of the Internal Revenue Code.  The Court did

not allow the loss to be deducted as an investment loss.  It held:

> If allowed, this would be the practical equivalent of
> double deduction. In the absence of a provision of the Act
> definitely requiring it, a purpose so opposed to precedent
> and equality of treatment of taxpayers will not be
> attributed to lawmakers.  *Id*. at 68.

Here, allowing Conopco deductions for amounts it paid to redeem its stock

would also give Conopco "the practical equivalent of double deduction."  It would be

able to deduct one economic expense twice.  Section 404(k) does not allow for such a

result.  This is clear when one considers that Congress gave the Service the specific

authority to disallow deductions under Section 404(k) if the deductions resulted in an

evasion of tax.  26 U.S.C. § 404(k)(5)(A).

Conopco makes three arguments as to why the "double deduction" doctrine

- 25 -

should not apply to its case.  All should be rejected.

First, it argues the "double deduction" doctrine is limited to situations in which taxpayers claim two deductions from the same payment.  (Conopco's Brief at 15.)  But the "double deduction" doctrine is not so limited.

In *United States v. Skelly Oil*, 394 U.S. 678 (1969), *rehearing denied* 395 U.S. 941 (1969), the Court applied the "double deduction" doctrine.  Skelly Oil received a depletion allowance for revenues that it later had to return to its customers.  It sought to fully deduct the amounts it later had to return to its customers.  The Court, citing the "double deduction" doctrine, did not permit the taxpayer to deduct the full amount it returned, because allowing it to do so "would allow respondent a total of $1.27 ½ in deductions for every $1 refunded to its customers."  *Id.* at 684.

In *Brenner v. Commissioner*, 62 T.C. 878 (1974), the court applied the "double deduction" doctrine to deny the taxpayer a deduction for a second payment he made.  The taxpayer borrowed funds to invest in a partnership.  He lost these funds when the partnership failed, and he claimed a deduction for his loss.  Later, he repaid his creditors the amount due on the loan, and he claimed a deduction for this repayment as a business expense.  The court denied this deduction.  In so holding, the court stated:

> To allow Brenner to deduct the repayments of the loans obtained to acquire the Ira Haupt interest would allow him "the practical equivalent of a double deduction."  *Ilfeld Co. v. Hernandez*, 292 U.S. 62, 68 (1934).   The Code "should not be interpreted" to allow double deductions for the same amount "absent a clear declaration of intent by Congress," *United States v. Skelly Oil Co.*, 394 U.S. 678, 684 (1969), *rehearing denied* 395 U.S.

941 (1969), and we not think section 162(a) reflects any such intent. *Id.* at 885.

Accordingly, the "double deduction" doctrine applies where a taxpayer could receive "the practical equivalent of a double deduction," not merely where he seeks two deductions from one payment.

Second, Conopco asserts that courts should not look at the economic effect in determining whether a double deduction occurs. (Conopco brief at 16.) But an economic analysis is precisely what is required to determine whether the "double deduction" doctrine applies. In *Skelly Oil*, for example, the Court determined that if the taxpayer were allowed the deduction it was seeking it would receive deductions totaling $1.27½ for each $1 of expense the taxpayer incurred. As a result, the Court limited the deduction the taxpayer was allowed so it could receive deductions only for the amount it actually expended. Similarly, in *Brenner*, the court disallowed the deduction the taxpayer sought, because it would have given him a deduction greater than his net expense.

Finally, Conopco asserts that the Service acknowledges that some economic double deductions apply under Section 404(k), but it cannot provide a rule for determining which double deductions are allowed. (Conopco brief at 16-17.) But in so arguing, Conopco ignores the fact that the Service has explicitly stated that the double deduction Conopco seeks is not permitted. The Service did so when it promulgated Rev. Rul. 2001-6 under the authority Congress granted to it under 26 U.S.C. § 404(k)(5)(A).

1968407.1

Because allowing Conopco the deductions it seeks would result in its receipt of "the practical equivalent of a double deduction," and because there is no statutory intent for Conopco to receive a double deduction, it should not be allowed to claim these deductions, and its refund action should be denied.

**ARGUMENT IV**

**THERE ARE MATERIAL FACTUAL ISSUES IN DISPUTE
THAT PRECLUDE CONOPCO FROM RECEIVING
SUMMARY JUDGMENT**

Finally, there are factual issues that preclude Conopco from receiving summary judgment. The Federal Rules of Civil Procedure require that motions for summary judgment be supported by affidavit. Fed. R. Civ. P. 56(a). Here, Conopco has submitted declarations in support of its motion, but the declarations do not support all of the facts Conopco asserts. Further, some of the facts that are supported by the declarations are contradicted by the ESOP trust's (Fidelity's) trading records, records that Conopco provided the government during discovery.

For example, Conopco asserts it paid $47,753,608 to redeem its preferred shares from the ESOP, (Conopco brief at 5), but ultimately this amount is based, not on declarations, but rather on what Conopco stated in its own refund claims. And the stock redemptions asserted in these refund claims are at variance from Fidelity's underlying trading records. Certain of the redemptions listed in the refund claims do not appear in Fidelity's trading records. Other listed redemptions represent preferred shares that were converted into Conopco common stock, and Conopco paid nothing to the ESOP to

- 28 -

convert such shares.

Conopco also asserts that the largest amount of shares it redeemed was 4,746 shares.  But Fidelity's trading records indicate that Conopco redeemed more shares during the years at issue.

Because of these factual disputes, Conopco is not entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, this Court should grant the United States' motion for summary judgment and deny Conopco's motion.

DATED: October 13, 2006

CHRISTOPHER J. CHRISTIE
United States Attorney


 /s/Lawrence P. Blaskopf
LAWRENCE P. BLASKOPF
Trial Attorney, Tax Division
United States Department of Justice
Post Office Box 227
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 514-9642

1968407.1